Filed 3/4/22  P. v. Gonzalez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093049 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F05656) |
| v. | |
| JOSE GONZALEZ, | |
| Defendant and Appellant. | |

Defendant Jose Gonzalez appeals the denial of his Penal Code[1] section 1170.95 petition.  He argues the superior court incorrectly analyzed his claim and should have weighed the evidence as an independent trier of fact under section 1170.95, subdivision (d)(3).  He further argues that substantial evidence does not support the court's finding that he could still be convicted of murder despite the change in the law.

---

[1]     Undesignated statutory references are to the Penal Code.

1

The People agree with defendant that the court erred in undertaking a sufficiency of the evidence review but contend that the error was harmless because defendant was ineligible for relief.

We agree with the parties that the trial judge applied an incorrect standard based on a now-vacated appellate decision. We find the error is not harmless and will reverse the order denying the petition and remand for a new hearing.

FACTUAL AND PROCEDURAL BACKGROUND

We quote at length from our unpublished opinion upholding defendant's conviction in his first appeal:

"[I]n May 2008 [J. G.] and his family, which included his wife, Celica, and two stepsons who were Sureño gang members, were living at a house on Lindley Drive. They had lived there for seven years.

"On Memorial Day, [J. G.] was with some other family members in the garage and driveway area of his house when a group of young men walked up, including one wearing a red bandana across his face. That was Jaime [Torres], who is a Norteño gang member. Also in the group was [defendant], who is also a Norteño gang member.

"Jaime challenged [J. G.]'s stepsons to come out and fight. [J. G.] said he was going to call the police and pulled out his cell phone. A physical struggle between Jaime and [J. G.] ensued. At some point, Jaime pulled out a gun. According to [J. G.']s stepdaughter, Veronica, [J. G.] was able to grab the gun and throw it away, but he threw it in the direction of the group that Jaime came with. Another witness testified that [J. G.] 'somehow hit the gun . . . out of [Jaime's] hand, and it flew towards where the group was.' [J. G.']s widow testified that it was Jaime who 'threw [the gun] to where the others were at.'

"Another member of the group of young men picked up the gun and told [J. G.] to let go of Jaime. When he did not do so, the man fired a shot, hitting a nearby van. The man then stepped closer and shot [J. G.] in the head.

2

"The People charged seven individuals, including Jaime, [defendant], and Sergio [Torres], with [J. G.]'s murder. In May 2011, Sergio pled no contest to the lesser included offense of voluntary manslaughter in exchange for a middle-term sentence of six years in prison. In late August 2011, Jaime and [defendant] (along with another defendant who was ultimately acquitted) went to trial. At trial, [defendant] testified that he followed the group of young men down Lindley toward [J. G.]'s house but claimed he never got closer than 'one house over.'

"The prosecutor argued there was 'high confidence that the gunman, the actual killer was [defendant]' and that the shooter committed first degree murder. The prosecutor further argued that to the extent they did not pull the trigger, the defendants were guilty of the murder either because they aided and abetted the murder or because they committed or aided and abetted the crime of fighting or challenging to fight and the murder was a natural and probable consequence of that crime." (*People v. Torres* (Feb. 18, 2014, C069510) [nonpub. opn.] (*Torres*).)

On September 15, 2011, defendant was convicted of first degree murder (§ 187, subd. (a)). The jury found that during the commission of the murder, a principal personally and intentionally discharged a firearm causing great bodily injury to the victim. (§ 12022.53, subd. (e).) The jury also found true the gang enhancement allegation, that the offense was committed for the benefit of, at the direction of, and in association with the Norteño criminal street gang (§ 186.22, subd. (b)(1)). Defendant was sentenced to 50 years to life in state prison, which consisted of 25 years to life for first degree murder (§ 187, subd. (a)) plus 25 years to life consecutive for the firearm enhancement (§ 12022.53, subd. (e)).

Defendant appealed his conviction and in 2014, this court concluded that "the trial court erred when it failed to instruct the jury that under the natural and probable consequences doctrine an aider and abettor may be culpable of a lesser offense than the perpetrator." (*Torres*, *supra*, C069510.) In that opinion, this court reasoned: " 'Error in

3

instructing the jury concerning lesser forms of culpability is reversible unless it can be shown that the jury properly resolved the question under the instructions, as given.' [Citation.] No such showing has been made here. Furthermore, this conclusion applies to [defendant] as well as to Jaime, even though [defendant] was subject to the additional theory that he was the perpetrator, because the record does not show whether the jury found [defendant] guilty as the perpetrator, as an aider and abettor of the murder, or as an aider and abettor of fighting or challenging to fight based on the natural and probable consequences doctrine. Nevertheless, because 'the court's instructional error affected only the degree of the crime of which [defendant] was convicted,' we ' "may reduce the conviction to [the] lesser degree [of the offense] and affirm the judgment as modified, thereby obviating the necessity for a retrial," ' but at the same time we must ' "give the prosecutor the option of retrying the greater offense, or accepting [the] reduction to the lesser offense." ' [Citation.] Accordingly, that is what we will do." (*Torres*, *supra*, C069510.) Thereafter, on remand, the district attorney accepted the reduction of defendant's conviction, and defendant's first degree murder conviction was reduced to a second degree murder and his sentence was reduced to 15 years to life.

On February 28, 2019, defendant, through counsel, filed a petition for resentencing pursuant to section 1170.95. On October 21, 2019, the People filed a response and moved to dismiss the petition for failing to state a prima facie case for relief. On June 19, 2020, defendant filed written opposition, arguing that he had in fact made the requisite prima facie showing. On July 7, 2020, the court found that defendant made a prima facie showing that he falls within the provisions of section 1170.95, issued an order to show cause, and set the matter for an evidentiary hearing. The People argued that defendant was ineligible for relief because he was prosecuted for murder under three theories and two of them remain valid after the changes to sections 188 and 189 and he could still be convicted under those theories: directly aiding and abetting malice murder or directly perpetrating malice murder.

4

On October 21, 2020, following the evidentiary hearing, the superior court denied the petition, finding that defendant was not eligible for relief under section 1170.95 because substantial evidence indicated he could still be found guilty of murder under theories of liability that remain valid and upon which the jury was instructed. The court reasoned as follows:

"Defendant Jose Gonzalez does not qualify for relief under section 1170.95 because he does not satisfy all three requirements.

"[¶] . . . [¶]

"The problem is with the third requirement, which requires that defendant Gonzalez could not be convicted of first or second degree murder because of changes to Penal Code sections 188 or 189 effective January 1, 2019. Defendant Gonzalez cannot make this showing because his murder conviction still holds up under the current law. As the [C]ourt of [A]ppeal explained, [defendant] does not challenge the sufficiency of the evidence to support his conviction under the third theory - that he was the shooter. Theories of both, directly aiding and abetting the murder and being the shooter both remain valid basis for murder conviction. As the [a]ppellate court recognized: 'we again note that the prosecution proceeded against [defendant] on multiple theories of liability for [J. G.]'s murder. Even if we were to find that, as to [defendant], there was insufficient evidence to find that first degree murder was a natural and probable consequence of the fight he aided and abetted (because, for example, there was no evidence [defendant] was aware Jaime had a gun before Jaime brought it out during the fight), we could reverse [defendant]'s conviction only upon a showing to a reasonable probability, based on the record, that the jury found him guilty on this theory, as opposed to the theory that he was the actual shooter. [Citation.] [Defendant] has not made any such showing. Accordingly, this claim of evidentiary insufficiency is of no avail to [defendant] either.'

5

"The evidence presented demonstrated [defendant] was a gang member affiliated with the Norteños, a gang preferring the number 14, the color red, and hand gestures indicative of their preference for this particular criminal organization. The residence where the victim lived was the home to young men who openly affiliated themselves with a rival gang associated with the Sureños, a group preferring the number 13, the color blue and hand gestures indicative of their preference for this particular criminal organization. This basic distinction provided motive to kill those choosing to associate with the rival's number, color, or hand gesture.

"There was testimony indicating that defendants Jaime Torres and [defendant] walked together to the victim's house. There was evidence that each appeared angry (they looked 'Hella mad') as they walked, and that they were 'power walking' toward the victim's house.

"Although there were varying descriptions of the shooter, he was described by some as having long hair that was in a ponytail, several inches past the shoulder, that he appeared Mexican with eyes that looked kind of Asian, that he was not skinny like the guy with the red rag but 'chunkier', wearing a light white baggie shirt and blue shorts.

"It was undisputed that on Memorial Day 2008[, defendant] had really long hair he wore in a braid. There was testimony that the only person walking down the street towards the Southsider's home that had long braided hair was [defendant]. There was testimony indicating all the guys in the group who approached the Sureños home were skinny and [defendant] was the only one that was not. According to testimony, [defendant] was wearing a white shirt and jean shorts on the day of the murder. [Defendant]'s mother noted to law enforcement that her son [defendant] was 'soaking wet' when he got home following the shooting.

"His distinctive hairstyle, body shape, and clothing description lend itself to the interpretation that he was the shooter. His change of appearance at trial and dishonesty to law enforcement tend to support this as a viable interpretation of the evidence. The

6

closeness and longevity of his relationship with Jaime Torres and their shared gang affiliation support this interpretation. His flight following the incident, that fact that he was soaking wet upon his arrival home, and his showering shortly after the homicide lend support for this interpretation. The jury's rejection of his assertion that he was not a gang member and rejection of his claim that [he] only walked up the street because he was nosy, not to help anyone, lend support to this interpretation.

"[Defendant]'s appearance significantly changed between 2008 and the trial. By the time of the trial, [defendant] had cut his hair short and lost significant weight. The change in appearance by [defendant] was so dramatic that even persons who knew [him] for many years, and knew what he looked like in 2008, could not, or had difficulty, identifying him at the time of the trial.

"Defendant Jose Gonzalez is not eligible for relief under section 1170.95, as a review of the evidence indicates he could still be found guilty of murder under theories of liability that remain valid upon which the jury was instructed. Accordingly, his petition is denied." (Fns. omitted.) In reaching its conclusion, the court noted that it applied the sufficiency of the evidence review outlined in *People v. Duke* (2020) 55 Cal.App.5th 113, vacated November 23, 2021, No. S265309.

Defendant filed a timely notice of appeal on October 22, 2020.

DISCUSSION

Defendant contends the superior court erred in applying an incorrect analysis under section 1170.95, subdivision (d)(3) when evaluating his claim. The People concede that *People v. Duke*, *supra*, 55 Cal.App.5th at page 113, which was recently vacated by our Supreme Court, was not correctly decided and agrees with defendant's position that trial courts should act as independent fact finders at evidentiary hearings held pursuant to section 1170.95. We agree with the parties. Because we cannot conclude that the trial court determined the People proved beyond a reasonable doubt every element necessary to find defendant guilty of murder -- as that offense is currently

7

defined -- we will reverse the order denying defendant's petition and remand for a new hearing on the order to show cause.

Senate Bill No. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or his individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-844.) Prior to the passage of Senate Bill No. 1437, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) Senate Bill No. 1437 amended section 188 to clarify that malice may not be imputed to a person based solely on his or his participation in a crime. (§ 188, subd. (a)(3).) Thus, pursuant to Senate Bill No. 1437, where the felony-murder rule is not at issue, a person must act with malice to be convicted of murder. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 973-974.)

Senate Bill No. 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a felony-murder or natural and probable consequences theory may petition in the sentencing court to vacate convictions and seek resentencing. As relevant here, defendant is eligible for relief under section 1170.95 if he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 made by Senate Bill No. 1437. (See § 1170.95, subd. (a)(3).)

Here, the superior court determined the prima facie showing was made and issued an order to show cause. The court then conducted a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165-1166.) The parties agree that it was necessary for the prosecution to prove, beyond a reasonable

doubt, that the petitioner was ineligible for resentencing. (§ 1170.95, subd. (d)(3).) However, relying on *Duke*, the superior court applied a sufficiency of the evidence review.

We conclude that the prosecution must establish guilt beyond reasonable doubt under the new statutes; that is, the superior court must find beyond a reasonable doubt that defendant actually acted with the now-required mental state, as opposed to merely that a jury *could have* so found. (See, e.g., *People v. Mancilla* (Aug. 12, 2021, B308413) 67 Cal.App.5th 854, 863, review den. (Oct. 27, 2021, S270859) [rejecting the *Duke* analysis, consistent with the majority of published opinions adopting the same position].)

The trial court erred in applying the standard articulated in *Duke* rather than independently evaluating whether defendant *would* still be convicted of murder based upon a showing by the People beyond a reasonable doubt that every element currently required to establish his liability for murder had been met. Under these circumstances, we agree with defendant that we must remand the matter for a new section 1170.95, subdivision (d)(3) hearing. At the new hearing, the parties should be afforded the opportunity to present additional evidence, should they so request. In light of this remand, we need not reach defendant's substantial evidence claim.

We disagree with the People's contention that "[t]here is overwhelming evidence that the trial court would have denied [defendant]'s petition under an independent factfinder standard, focused on whether it is true beyond a reasonable doubt that appellant acted with actual malice." The record and the trial court's own summary of the evidence do not support this contention. There was mixed evidence in the case as to the identity of the shooter and on remand, the court should evaluate the evidence in light of the proper standard. Because we cannot conclude as a matter of law that defendant was ineligible for relief, we conclude the error was not harmless. Accordingly, we will remand for further proceedings consistent with this opinion.

## DISPOSITION

The order denying defendant's petition is reversed and the case is remanded for the trial court to conduct a new hearing under section 1170.95, subdivision (d)(3), as described by this opinion.


/s/
Robie, J.


We concur:


/s/
Raye, P. J.


/s/
Hull, J.